Good afternoon, Your Honors. This is Jonathan Belshot on behalf of Plaintiff Van Douglas, Jr. I would like to just, you know, first of all, ask if there's any questions that you would like me to answer regarding the briefs. If not, you know, again, I think that the arguments that we set forth in the papers sufficiently addresses the situation. Again, I think that the issue that we're dealing with here is a question of a summary judgment motion in the discrimination retaliation case. My client, Mr. Douglas, was retaliated against. That was found by the EEOC. There was no question about that. He went through an administrative hearing by himself without an attorney. They found that he was retaliated against, and it was based off of his filing prior EEO complaints and also racial discrimination. Based on our decision in Carver v. Holder, you made the decision to file an action in district court. So are we bound by the administrative determinations of the EEOC? Carver says we are not. That is correct. The issue is that Mr. Douglas did file multiple EEO claims against the Postal Service. There were certain EEO claims that were decided that are not being litigated and certain other discriminatory acts that we are appealing. Over the course of the 30 years that he was working there, there were many EEO claims that he filed. Some of them are related to others. Some of them aren't. The EEO claims that went before the EEOC hearing over there, those ones were decided. Those are not being relitigated. The one that he is relitigating is the decision to terminate him, which happened in 2015. But what we have before us is a district court determination that you did not establish a prima facie case to show nexus between the earlier claims to the EEOC and the basis for his termination, which was violating the provisions of the last chance agreement. In our papers, what we described was that the reason why the district court made that determination was that they said that there was a last chance agreement which was signed, which basically, in effect, voided or released the U.S. Postal Service from liability. The problem is that the EEOC voided that last chance agreement in its entirety. That's one argument. I don't know. That seems to be a little ambiguous. I'm just wondering if the Office of Federal Operations found that the last chance agreement lacked language required by the OWBPA, how does that decision really support Mr. Van Douglas' contention that he did not enter into the LCA voluntarily? Well, I think that the EEOC decision specifically said that Mr. Douglas did not enter into that agreement voluntarily. And so what they did was they instructed the U.S. Postal Service to reinstate all of Mr. Douglas' claims that he filed under his EEO complaint. So they didn't just reinstate his age discrimination complaint, they said reinstate the whole thing. And the U.S. Postal Service did reinstate the whole thing. So there was no ambiguity from the Postal Service. If there was, they wouldn't have reinstated the whole thing. So their argument that there was ambiguity doesn't make any sense when, in fact, they acted just in the way that we're presenting to you. They didn't act in a way that was ambiguous and say, well, we're only going to reinstate the age claims. They reinstated the whole thing. And to the extent they're going to argue, well, it was ambiguous, but we thought that that was the ruling. Well, then if they thought, they did what they thought, which was to reinstate the whole thing. So there was no ambiguity. If they reinstated the whole thing, the question becomes on them, then why didn't you appeal it? If you believe that it only applied to the age claims, appeal the whole thing. Why do you reinstate what you think it doesn't apply to? So that's the question. But the second part of it is that the nexus between the retaliation and the termination, again, I think there's a very important frame that's being missed here. The issue is that if it wasn't for the retaliation that happened in 2014, there was a direct cause and effect that happened. Isn't your argument a but-for argument? That had it not been for his earlier EEOC complaint, he would never have been in this situation where he had to enter into a last chance agreement? Correct. That is the causation argument. And that causation, that fact of that but-for causation is a question for a jury. It's a fact-based question. There's no legal determination where you could determine but-for causation in that way. But that goes back to the voluntariness of entering into the last chance agreement. It seems like both parties gave up something. He gave up his earlier retaliation claims in order to get reinstated. The Postal Service gave up, it seems to me, if the agency is correct, they gave up potential liability under his age discrimination claim because it didn't comply with the statute that Judge Callahan referenced. But that doesn't invalidate the entire last chance agreement, does it? It just addresses the one claim that the Postal Service thought he was giving up, but as a matter of law, he didn't. Actually, the way that the last chance agreement was written was a release of all claims in exchange for getting his job back. Your argument is that, and apparently the agency's reasoning was, that if the age discrimination claim didn't comply with the cooling off period, I'll use that term, provided by the statute, therefore he couldn't have legally waived his age discrimination claim, that that somehow contaminated the entire last chance agreement, rendering all of the other releases and waivers unenforceable. And that's where I'm having a hard time following. That's not my interpretation, Your Honor. That's what the EEOC said. So the EEOC, and just to be clear, it's only- So are we bound by what the EEOC says? Yes, and I think there's a clear case law that says we're bound by what the EEOC says. Well, I come back to my question about Carver. That's not what Carver says. Well, this is a- Carver says that you reopen to de novo review all of the claims, and we look at them afresh. And so now we have to look for evidence of nexus. Well, so again, the Carver case is specific. If you bring an EEO, so we're not bringing an EEO, we're not challenging the EEO's decision on the last chance agreement. That was a separate- Carver says you don't get to pick and choose. It reopens the entire case. Well, again, this isn't- there are two separate cases. I mean, one is there's an EEO decision on the last chance agreement, and then there's an EEO decision on whether or not there was discrimination or retaliation. Counsel, you're trying to do exactly what Mr. Carver tried to do, and that is to parse his claims and save the ones that he won at the administrative level, but then challenge the court's ruling at the district court level. And we said in Carver, if you elect to bring your lawsuit, you are, in essence, reopening for de novo adjudication all of the bases, which would include both retaliation and age discrimination. Your Honor, I believe that the Carver case was not- is not very similar to this case, in that the Carver case, I think what it was talking about was splitting up between a retaliation claim and also the damages. So meaning that they wanted to split up one case of retaliation and the damages. And then the other difference here is that we have- Mr. Carver's claim was based on a finding of liability from the claim that he was trying to hang on to. I mean, I hear your attempt to distinguish it, but you're not convincing me that it's distinguishable. Let me ask you this. Let's assume if- do you have any more evidence of age discrimination than the fact that the OWBPA was not complied with in the LCA? Is that your total age discrimination claim? Correct. That is our age discrimination claim. Again, it's not- How does that make a prima facie case? Again, I think up to us, it's not up to us to- so a prima facie case just means all he needs to be is old and some- and to establish a prima facie case of age discrimination, he just needs to be in the protected class, which he was. He was older. And there needs to be a connection between the termination decision and the fact that he was older. And so we see right here that there was. The fact that the same agreement that they used to fire him could only have come about because they engage in age discrimination by not giving him proper due process to sign this agreement. So this very agreement that they used to fire him was obtained by them through the fruits of age discrimination. Okay. Do you want to save any time for rebuttal? Yes. Judge Lee, did you want to ask any questions before he goes- saves the time? Is that okay? I'll have it. Okay. Thank you. All right. Mr. Pinchas? Good afternoon, Your Honors, and may it please the court. I'm Assistant United States Attorney David Pinchas, and I represent the Postmaster General today. I have two points that I need to make in response to Mr. Douglas' reply brief, and I never had a chance to do that until now. First point, Douglas claims that I only raised the issue of his failure of proof as to Kim Ricard's knowledge of his- of Douglas' interrogatory response where he mentioned her. That is not correct. I raised that in the district court, and you can see that on ER 680 and 681. Second point is related to the first point. Douglas relies on Rod versus Fairbank School District for the proposition that you can impute knowledge from a prior EEO activity from what other managers typically know about these things. But that is exactly what Rod said you can't do. In Rod, this court said that a plaintiff must point to evidence of actual knowledge, not speculation or constructive knowledge. And I hear Douglas offers no evidence whatsoever that either Kim Ricard or Marcus Curry knew of his prior EEO activity. Therefore, he cannot make a case- a prima facie case of retaliation. Do you agree with Mr. Van Douglas that he's not barred from asserting an age discrimination claim? And if so, is there any evidence in the record that supports such a claim? I'm sorry, could you repeat the question, Your Honor? Do you agree that Mr. Van Douglas is not barred from asserting an age discrimination claim? An age discrimination claim, yes. You agree he can assert it? Yes, that wasn't waived because that was part of- we didn't have the language in the LCA that included the required language under the OWBPA. We're talking about the rest of it, the retaliation part. I know that. So is there evidence- so if you agree that it wasn't waived on the age discrimination, is there any evidence in the record that supports age discrimination? No, Your Honor, and Mr. DelShad just admitted that his only age discrimination claim is that the failure to put this language in the LCA is itself- creates an inference of discrimination by age. No court has ever ruled that. And it's rather counterintuitive because the only party that is harmed by the failure to include that language is the Postal Service. Mr. Douglas gets his job back and doesn't have to release all his claims of age discrimination. Every court that's looked at this has said that the OWBPA creates a shield for the plaintiff. It doesn't create a sword, and that is what he's trying to do. Now, he denies that he's trying to create a cause of action based on the failure to include that language, but that's really what he's doing. It's a distinction without a difference that he's trying to make, and that's why it's so unpersuasive. The record establishes that Mr. Douglas was removed because of unacceptable behavior and constant violation of postal rules. He was given numerous opportunities to correct his behavior, but he refused to do it. He didn't learn from his prior discipline when he got letters of warning and paper suspensions. In November 2014, he was given a notice of removal, but he was also given a second chance. He was given the LCA. They didn't have to give that to him. The Postal Service immediately violated the LCA, and they could have been fired at that point, but they gave him a third chance. They gave him, in January 2015, his managers that he accuses of retaliating against him, sat down with him, and so did his union representative, and they tried to impress upon him how important it was for him to abide by the LCA. He'd already violated it, but they told him, we'll hold your violations in abeyance if you don't violate it anymore. Well, unfortunately, he said he was going to try to do better, but he couldn't. He violated it a few weeks later again. Now, I guess this case raises the question, how many chances does an employer have to give an employee who commits misconduct, violates the rules, interferes with the employer's goals, and disrupts the workplace? How many chances does he get? As this court said in the Leong case, at some point, an employer has to draw the line, and that's what happens here. I could go through a list of all the things that Mr. Douglas has admitted, but if you don't have any more questions for me, I think I will submit my argument in the papers. Actually, I'm sorry. I do want to respond to something that Mr. Delshad just said in there. Well, you kind of got us all excited there. That was a trick there. Sorry, I'm sorry. I did take notes of what he said. Forgive me, please. Now, Mr. Delshad said that there was no ambiguity. We never raised ambiguity on his behalf in the EEOC. That's not true. In fact, Mr. Douglas made that same kind of statement in his reply brief, that we never claimed it was only the age discrimination, and that we never said we were confused. And then Mr. Delshad retracted that statement in his errata. The reason he retracted it is not true. It's not true because the agency didn't intend to reinstate the whole claim. What happened was the administrative judge issued an OSC why they shouldn't, and they explained, no, this waiver only applied to the age discrimination claim. So I guess at that point, Mr. Douglas would say it was too late, but it's not true that we didn't raise that. We were confused. And this isn't a case like the Girard case where there was just a timeliness issue that the EEOC had unlimited discretion to decide. This is a violation of the Supreme Court's ruling in Obrey and this court's ruling in the Harmon case. And let's see here. With that, I think I will submit on the record. I'm sorry about the false start there. Well, we'll accept that. Don't change your mind again. You will affirm the district court. Thank you very much. OK, thank you. All right. Mr. Delshad, you have let's see, it looks like you have four minutes for rebuttal. Thank you, Your Honor. Just just to point out again on the Carver case, I think the Carver case is very clear. And no other court in any other district has ever decided that two unrelated EEOC claims are if you bring a claim, if, for example, an employee claims discrimination on day one and then claims retaliation on day 10, and then they dispute the retaliation, the retaliation claim on day 10, they want to relitigate that. That doesn't de novo open up the discrimination claim on day one. There's never been any court that's ruled that those two claims would be related. The Carver court specifically talks about one claim for damages and liability. You can't split up damages and liability, but it doesn't say you can't split up multiple claims. And and a rule like that would be, in my opinion, a very difficult one for employees to swallow. The second thing is that this in this case, 29 CFR 1614.5048 specifically says that for any time, and this is specific to government agencies, whenever an EEOC decision is made on a government agency, that decision is final. There is no court that has ever, ever in the Ninth Circuit or anywhere came and said, we can relitigate something that's been final according to that CFR regulation. So what you would be doing in this case, by saying that this voided LLC agreement is not voided, by unvoiding it is a direct violation of the law under 29 CFR 1614.5048. This is not an extension of Girard. It has nothing to do with Girard. It's a straight CFR matter. And the EEO is empowered by Congress to make final decisions on all matters rightfully before it, including settlement agreements, which settle EEO matters. That's in 42 USC 2000 E16. So again, these decisions have already been decided. The agreement was voided. It was determined that it was not entered into knowingly or voluntarily. And it doesn't, the EEOC doesn't say that it's only because of the Older Workers Protection Act. There are other reasons that were argued in front of the EEOC, which stated that Mr. Douglas didn't feel, Mr. Douglas felt like he was being coerced into signing this agreement. In fact, he was being coerced. Now, Mr. Douglas was a great employee for 30 years. And he was falsely accused many times during his employment there of wrongdoing. And all of those times he was cleared, including the time, again, the U.S. Postal Service has a zero tolerance policy for violence. Yet they claim that Mr. Douglas was threatening a supervisor after he filed an EEO complaint against him. They ganged up on him, said he was threatening him. There is no evidence that he was doing that. There are so many facts to disprove that. And then when Mr. Douglas proves it to be wrong, what do they do? They reinstate him. Not only do they reinstate him, but they give him back pay because they knew they were wrong. But they do it in a way that violated the Older Workers Protection Act. They did it in a way to coerce him. They were only interested in getting him to drop his EEO claims, which is what they did. They retaliated against him to get him off work without pay and then offered him a carrot and said, if you sign this, we'll let you come back to work. Sign this meaning drop your EEO claims against us. And Mr. Pincus is wrong to say that the only harm was to the UPS by not having him have an attorney there. Because if I was there or another attorney was there and saw this clear retaliatory action and seeing that what they were trying to do was to get him to sign a document to release all his claims, nobody would have ever allowed him to do such a thing. It was a mistake. He was under duress to make it. And I don't think that the EEOC had every right to make their decisions and that the last tense agreement was void in its entirety, and it did. And it was an appeal. All right. Your time has expired. Thank you both for your arguments in this case. This case will now stand submitted. And the session of the court will be in recess until tomorrow at 1 o'clock. Thank you. And if the judges stay on, we'll be changed to the roving room.
judges: Tallman, Callahan, Lee